UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DM,
by her next friend,
JM,

        Plaintiff,        Case No.
                              Hon.

v.

THE TAUBMAN COMPANY, L.L.C.,

        Defendant.

---

Amanda M. Ghannam (P83065)
Nicholas Roumel (P37056)
Nacht & Roumel, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
*aghannam@nachtlaw.com*
*nroumel@nachtlaw.com*

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, DM, by her next friend JM, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, DM, is a resident of Lapeer County, Michigan, within the Eastern District of Michigan. She seeks to proceed under a pseudonym because she is a cognitively impaired adult and a survivor of attempted sexual assault. Her identity will be apparent to Defendant upon review of the allegations below.

2. Plaintiff's next friend, JM, is DM's mother. She too seeks to proceed under a pseudonym to protect her daughter's identity. JM's identity will also be apparent to Defendant upon review of this complaint.

3. If necessary and as required by this court, DM and JM will file the appropriate motion to proceed pseudonymously.

4. Defendant, The Taubman Company L.L.C. ("Taubman Company") is a Delaware limited liability company with its principal place of business in Oakland County and doing business in Oakland County within this judicial district.

5. This Court has subject matter jurisdiction pursuant to the Americans with Disabilities Act, 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. §1343(a)(4) (jurisdiction over civil rights claims).

6. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. § 1367 as they arise from the same case and controversy.

7. Venue in this Court is proper pursuant to 28 U.S.C. §1391 as a substantial part of the events of the events and omissions giving rise to this Complaint occurred in Oakland County, Michigan, located within this judicial district.

## STATEMENT OF FACTS

8. Plaintiff, DM ("DM"), is a young woman (DOB April 1994) who lives with her family in Metamora, Lapeer County, Michigan.

9. DM has been diagnosed with significant cognitive impairments, ranking in extremely low percentiles for intellectual ability, verbal ability, verbal comprehension, attention, problem solving, and learning and memory, *inter alia.*

10. DM's disability does not prevent her from maintaining some independence; she enjoys being on her own, and through the events described in this lawsuit, she drove by herself to various destinations.

### DM Enjoyed Visiting Great Lakes Crossing for Years Without Incident

11. Since she was a child, DM has enjoyed visiting the shopping mall at Great Lakes Crossing ("the mall," "GLC"), owned by Defendant.

12. As an adult, starting in 2015, DM drove herself to Great Lakes Crossing practically on a daily basis. It was something she looked forward to. She spent her time walking through the mall, visiting stores, browsing merchandise, and interacting with employees and customers, many of whom knew her by name.

13. Because of her cognitive limitations, although DM presents as a friendly person, she has an altered sense of social boundaries in her interactions with others. For the most part, those who encountered DM understood her readily apparent limitations and treated her with kindness and respect.

14. On occasion, if she was an undue distraction, store employees would politely ask DM to leave, and sometimes contacted mall security to assist.

15. When these minor incidents occurred, neither store employees nor mall security ever made a formal report, nor did they ever inform DM that she was trespassing and not welcome. On the contrary – DM was always welcomed back and in turn, she looked forward to her regular visits with friends in familiar territory.

16. However, everything changed after DM refused the sexual advances of the mall's security personnel, as described more fully below.

**DM Was Punished for Refusing to Be Taken Advantage of Sexually**

17. In 2017, two security guards employed by Defendant ("Mike" and "Alan") began to approach DM and engage in friendly banter, which soon shifted to flirtatious remarks, which then became overtly sexual.

18. A third security guard named "Matt" became involved.

19. At Mike and Alan's urging, DM invited Matt to her home for a visit, but Matt left in anger when DM wisely refused his sexual advances.

20. Hurt and confused, DM confronted Mike and Alan, whom she regarded as her friends, sometime around the weekend of January 8, 2018 (a day or two after Matt came to her house), to express her disapproval.

21. Retribution was swift, especially from Mike, who presented himself as the "head" security guard.

22. Mike went into Zales Jewelers, a store at GLC, and told the employees there that:

4

\*      He used to be a police officer in Lake Orion;

\*      He knew DM a long time and she was mentally disabled;

\*      The next time DM came to Zales, they should call security so that they could use it as justification to ban DM from the mall for "one year;"

\*      That such a ban was "needed" or "necessary;"

\*      That such a ban would be "in DM's best interests" and/or "needed for her well-being."

22.    Mike further instructed the Zales employees that it was not sufficient to merely ask DM to leave, but that they needed to file formal, written reports so that they would have a "complaint on file" so that this ban could be implemented.

23.    Accordingly, the next time DM visited Zales, an employee called security pursuant to Mike's instructions and completed formal reports as directed.

24.    Mall security then issued a written "trespass ban" to DM, barring her from entering the premises of Great Lakes Crossing, for the alleged offense of "disorderly conduct."

25.    DM was devastated by the ban and did not understand why people she thought were her friends would forbid her from one of her favorite places.

**Defendant Had DM Arrested**

26.    On March 25, 2018, mall security confronted DM as soon as she visited and not only issued her additional trespass bans, but called Auburn Hills police to make a complaint.

5

27. Auburn Hills police took DM into custody and issued her a misdemeanor trespass citation and summons to appear in 52nd District Court.

28. Commencing on March 30, 2018, DM's mother, JM, attempted to intervene. She reached out to Great Lakes Crossings' security office and explained her daughter's disability and long history of peaceful accommodation by mall personnel, and asked why DM was no longer being accommodated for her disability.

29. Defendant did not provide JM the mall's ADA policy, despite her request, and did not follow up with her in spite of repeated promises.

30. Meanwhile, DM, in an attempt to resolve the situation on her own, went to Great Lakes Crossing to try to find someone to explain to her why she had been banned.

31. When DM visited the mall again on April 21, 2018, mall security again contacted police, who placed her under arrest for trespassing, handcuffing her and placing her in their police vehicle for transport to the police station for processing, taking of a booking photo, and fingerprinting before she was released.

32. Still not fully comprehending, DM visited the mall again on May 21, 2018. Mall security again contacted police and DM was again arrested, taken into custody, and taken to the police station for processing.

33. DM faced three trespass charges and her mother hired an attorney to defend her. DM was ordered to undergo a psychiatric evaluation.

34. The evaluation determined that DM was not competent to stand trial, and upon receipt of this report, the prosecutor dismissed the charges without prejudice.

35. DM remains banned from Great Lakes Crossing. They have extended the trespass ban for two years, through May, 2022.

## LEGAL ALLEGATIONS

### COUNT I
### Violation of the Americans with Disabilities Act
### 42 U.S.C. §12181 *et seq.* - Discrimination

36. At all times relevant, Defendant owned and operated the Great Lakes Crossing shopping center, a place of public accommodation pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §12181(7)(E) ("ADA").

37. Plaintiff has a disability as defined by the ADA.

38. The regulations accompanying Title III of the ADA provide in relevant part, at 28 CFR §36.201:

> (a) Prohibition of discrimination. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation.

39. The regulations further provide, at 28 CFR §36.202:

> (a) Denial of participation. A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other

arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

40. Defendant discriminated against Plaintiff on the basis of her disability, in violation of the above-cited regulations.

41. Defendants' actions in violation of the ADA were willful.

42. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged as described herein and below.

## COUNT II
### Retaliation in Violation of the Americans with Disabilities Act
### 42 U.S.C. §12181 *et seq.* - Retaliation

43. The regulations accompanying Title III of the ADA further provide, in relevant part, at 28 CFR §36.206:

> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.
>
> (c) Illustrations of conduct prohibited by this section include, but are not limited to:
>
> > (1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;
> >
> > (2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

> (3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or
>
> (4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

44. Defendant retaliated against Plaintiff for her attempts to exercise her rights under the ADA, in violation of the above-cited regulation.

45. Defendants' actions in violation of the ADA were willful.

46. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged as described herein and below.

## COUNT III
### Violation of the Persons with Disabilities Civil Rights Act
### MCL §37.1101 *et seq.* - Discrimination

47. At all times relevant hereto, Defendant owned and operated the Great Lakes Crossing shopping center, a place of public accommodation as defined by M.C.L. §37.1301(a), part of Michigan's "Persons With Disabilities Civil Rights Act" ("PWDCRA").

48. Defendant is a "person" as defined by MCL §31.1103(g), and a "place of public accommodation" as defined by MCL §31.1301 (a).

49. Plaintiff has a disability as defined by the Persons with Disabilities Civil Rights Act, MCL §31.1103 (d).

50. The PWDCRA provides in relevant part that a person shall not:

9

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

51. Defendant discriminated against Plaintiff on the basis of her disability, in violation of the PWDCRA.

52. This discrimination resulted in the denial to Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations provided by Defendant.

53. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged as described herein and below.

### COUNT IV
### Violation of the Elliott-Larsen Civil Rights Act
### MCL §37.2301 *et seq.* – Sex Harassment

54. Great Lakes Crossing is a place of public accommodation as defined by M.C.L. §37.2301(a), part of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

55. ELCRA provides in relevant part that it is a prohibited practice to "Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." [MCL §37.2302 (a)]

56. Defendant discriminated against Plaintiff on the basis of her sex, by subjecting her to unwanted sexual harassment.

57. This discrimination resulted in the denial to Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations provided by Defendant.

58. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged as described herein and below.

## COUNT V
### Violation of the Elliott-Larsen Civil Rights Act
### MCL §37.2301 *et seq.* - Retaliation

60. ELCRA provides in relevant part that:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL §37.2701 (a)]

61. Defendant retaliated against Plaintiff for opposing sexual harassment by subjecting her multiple trespass bans and criminal arrest.

62. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged as described herein and below.

### Damages

63. As a direct and proximate result of Defendant's actions, Plaintiff has suffered the following damages:

Economic damages including costs and attorney fees associated with her wrongful arrest; non-economic damages including emotional distress, humiliation, embarrassment, outrage, disappointment, loss of enjoyment of life, and other forms of mental anguish that result Defendant's wrongful acts.

### JURY DEMAND

Plaintiff demands a jury trial.

### RELIEF REQUESTED

For the foregoing reasons, Plaintiff DM prays that this Honorable Court grant the following relief:

a. Declare that the foregoing practices and actions of Defendant constitute unlawful practices in violation of the ADA, PWDCRA, and ELCRA;

b. Order injunctive relief, as permitted by the ADA, PWDCRA, and ELCRA, in Plaintiff's favor to end Defendant's illegal practices, and restore the last uncontested status quo;

c. Award Plaintiff economic and non-economic damages under the PWDCRA and ELCRA, including the greatest possible combination of emotional distress and exemplary damages caused by Defendant's wilful illegal conduct;

d. Award Plaintiff reasonable attorney's fees, costs, and interest; and

  e. Award such other relief as this Court deems just and proper.

***W H E R E F O R E*** Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this Complaint.

        Respectfully submitted,

        *s/ Amanda M. Ghannam*

        *s/ Nicholas Roumel*

        Amanda M. Ghannam (P83065)
        Nicholas Roumel (P37056)
        Nacht & Roumel, P.C.
        Attorneys for Plaintiff
        101 N. Main St., Ste. 555
        Ann Arbor, MI 48104
        (734) 663-7550
        *aghannam@nachtlaw.com*
January 3, 2020     *nroumel@nachtlaw.com*